IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:  MARITIME COMMUNICATIONS
/LAND MOBILE, LLC                                         CHAPTER 11
Debtor                                                    CASE NO. 11-13463-DWH

ORDER GRANTING, ON AN INTERIM BASIS, EMERGENCY MOTION TO
AUTHORIZE FINANCING PURSUANT TO 11 U.S.C. § 364

THIS CAUSE having come on to be heard for consideration on the *Emergency Motion to Authorize Financing Pursuant to 11 U.S.C. § 364* [DK #28] (the "Emergency Motion"), filed herein by Maritime Communications/Land Mobile, LLC (the "Debtor" and/or "Movant") and upon the Objections thereto filed by Warren Havens, Skybridge Spectrum Foundation, Verde Systems LLC (formerly called Telesaurus, VPC LLC), Environmental LLC (formerly called AMTS Consortium LLC), Intelligent Transportation & Monitoring LLC, and Telesaurus Holdings GB LLC (collectively "SkyTel") [the "SkyTel Objection," DK #44], National Rural Telecommunications Cooperative ("NRTC") [DK #45], the United States Trustee ("UST") [DK #48] and Pinnacle National Bank ("Pinnacle") [DK #53], the Court having heard and considered the Emergency Motion, the objections thereto, evidence and arguments of counsel in support of, and in opposition to, the Emergency Motion, is of the opinion that the Emergency Motion should be granted, on an interim basis, subject to the terms and conditions of this Order. The Court does hereby order, find and adjudicate as follows, to-wit:

1.  On August 1, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, § 101, *et seq.* (the "Bankruptcy Code").

2.  The Movant brings this Emergency Motion under Section 364(d) of the Bankruptcy Code and Bankruptcy Rule 4001(c).

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 11 U.S.C. § 157(b)(2).

4. Venue of this matter is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409(a).

5. Notice and a hearing were adequate and appropriate under the circumstances.

6. The Debtor operates numerous licenses for wireless and cellular services, and alleges that it owns those licenses.

7. The Debtor alleges that its assets primarily include Federal Communications Commission licenses (the "Licenses").

8. The Debtor generates revenue from the Licenses (the "Revenue Stream").

9. The monthly Revenue Stream was approximately $400.00/month during the few months immediately preceding the filing of the Emergency Motion.

10. The Debtor desires to obtain, and Southeastern Commercial Finance, LLC (the "Lender") desires to extend, a loan in the original principal amount of $150,000.00 (the "DIP Loan").

11. The DIP Loan is evidenced by that certain Debtor in Possession Loan and Security Agreement that was attached to the Emergency Motion as Exhibit "A" and was incorporated therein by reference, as now modified consistent with the representations made to the Court at the hearing on the Emergency Motion (the "DIP Loan Agreement," which is incorporated herein by reference) and a resulting Promissory Note with terms consistent therewith that will be executed (the "DIP Note" and together with the DIP Loan Agreement, collectively, the "DIP Loan Documents"). The DIP Loan Documents were not finalized as of the date of the hearing on Emergency Motion, but the Debtor and the Lender advised the Court that

they had reached an agreement with respect to modifications to the DIP Loan Documents (in the form attached to the Emergency Motion) and that the DIP Loan Documents (in the form attached to the Emergency Motion) would need further modification as a result of certain objections that were filed and settlements that were made immediately prior to the hearing on the Emergency Motion. The DIP Loan Documents have now been finalized and submitted to all objecting parties.

12. The first $50,000 of the DIP Loan (hereinafter, the "Interim DIP Loan") is necessary for the Debtor to continue to operate its business and reorganize its debts and obligations pending a final hearing to approve the remaining DIP Loan of $100,000.

13. Specifically, the Debtor seeks to pay its trade creditors, salaries, certain consulting fees (upon the Court's approval of the retention of the subject consultant), post-petition operating costs and administrative expenses with proceeds from the Interim DIP Loan (the "Expenses").

14. The Debtor is not able to obtain credit except as provided under the terms of the DIP Loan Documents with Lender.

15. The Debtor and Pinnacle assert that the Revenue Stream is encumbered by a first lien held by Pinnacle.

16. For purposes of this Order based on the agreement with Pinnacle, Pinnacle's asserted interest in the Revenue Stream is adequately protected by any equity in the Revenue Stream and all other collateral it may hold.

17. The Interim DIP Loan will provide the Debtor with immediate and ongoing access to borrowing availability to pay the Expenses during the administration of this chapter 11 case pending a final hearing on the Emergency Motion and the final DIP Loan. Unless these expenditures are made, the Debtor could be forced to cease operations, which could result in

irreparable harm to its business and substantial deterioration of the value of its enterprise to the detriment of its estate, its employees, its creditors, and its stockholders.

18. The Lender is willing to provide debtor-in-possession financing to the Debtor in exchange for a secured claim that is a perfected first priority lien in the Debtor's assets that is *pari passu* with Pinnacle, as to any assets upon which Pinnacle holds a properly perfected first lien and security interest, and to the extent there are assets of the Debtor that are not encumbered by Pinnacle's liens, then a perfected first priority lien in those assets.

19. The Debtor's immediate working capital needs can be satisfied only if the Debtor is immediately authorized to borrow $50,000.00 under the Interim DIP Loan and to use such proceeds to fund its operations, pursuant to the Interim Monthly Budget that was attached to the Emergency Motion as Exhibit "B" and is incorporated herein by reference. The Debtor is unable to obtain the funds to be provided under the Interim DIP Loan on more favorable terms than those contained in the Interim DIP Loan Documents. Although the Debtor did not actively seek to obtain funds on an unsecured basis, the Court finds, given the circumstances of this case, that the Debtor could not (i) obtain the required funds in the ordinary course of business on an unsecured basis allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, or (ii) obtain the required funds in the non-ordinary course as an administrative expense allowable under section 503(b)(1) of the Bankruptcy Code.

20. The terms offered by the Lender are significantly more favorable than any terms that would be offered by other lenders. The circumstances of this case require the Debtor to obtain financing under sections 364(d) of the Bankruptcy Code, and accordingly, the Interim DIP Loan Agreement reflects the exercise of its sound business judgment. Here, financing is

available only under section 364(d) of the Bankruptcy Code and as agreed with Pinnacle and that entering into the Interim DIP Loan is in the best interests of the Debtor and its estate.

21. The Debtor negotiated with the Lender at arms-length, in good faith and pursuant to its sound business judgment. The terms and conditions of the Interim DIP Loan Agreement are fair and reasonable under the circumstances. Accordingly, the Lender and all obligations incurred under the Interim DIP Loan Documents should be afforded the benefits of section 364(e) of the Bankruptcy Code consistent with its agreement with Pinnacle.

22. Bankruptcy Rule 4001(c) provides that a final hearing on a motion to obtain credit may not be commenced earlier than 15 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. Pursuant to Bankruptcy Rule 4001(c), the Court: (a) conducted an expedited preliminary hearing on the Emergency Motion and approved the Interim DIP Loan authorizing the Debtor to borrow $50,000.00 on an interim basis to (i) maintain and finance the ongoing operations of the Debtor, and (ii) avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties in interest, and (b) schedule a final hearing on the relief requested herein.

23. Absent this authorization to obtain the Interim DIP Loan pending a final hearing, the Debtor will be immediately and irreparably harmed. As set forth above, the Debtor's ability to enter into the Interim DIP Loan Agreement is critical to the success of its chapter 11 case, its ability to reorganize or to liquidate in orderly fashion, and the ability to preserve any value for its creditors. Without immediate liquidity provided by access to the Interim DIP Loan, the Debtor

will simply be unable to conduct normal business operations, and its estate, creditors, employees, and equity holders will be immediately and irreparably harmed.

24. Notwithstanding anything to the contrary that may be contained in this Order or in the DIP Loan Documents or otherwise, the security interest granted to the Lender will not encumber any FCC Licenses, pursuant to applicable federal law, including the Communications Act of 1934, as amended, and the rules, regulations and policies promulgated thereunder, but, assuming the Debtor has the right to hold the FCC licenses, the security interest will include all proceeds of the FCC Licenses while held by the Debtor, and the right to receive all monies, consideration and proceeds derived from or in connection with the Debtor's sale, assignment, transfer, or other disposition of any FCC Licenses that are held by the Debtor at the time of such sale, assignment, transfer, or other disposition.

25. As noted, the Objection of Pinnacle was resolved by the Agreement that the liens granted to the Lender, will be *pari passu* with any and all liens which have been granted to Pinnacle, as to assets of the Debtor upon which Pinnacle holds a properly perfected security interest and, in the event there are assets of the Debtor as to which Pinnacle is not properly secured, then the Lender shall have a first lien upon, and first security interest in, those assets in the event they exist. The Debtor is authorized and directed to execute such documentation as requested by Pinnacle to extend the maturity date of the indebtedness owed to Pinnacle to December 1, 2011. The Lender shall not assess the Debtor with any costs, fees and expenses in connection with the Interim DIP Loan. The Interim DIP Loan will be fully due and payable within six (6) months from the entry of this Order.

26. Notwithstanding anything to the contrary that may be contained in this Order or in the DIP Loan Documents or otherwise, nothing in this Order shall be deemed to be an

adjudication that the Debtor owns the FCC Licenses, and SkyTel reserves and maintains the right to continue to: (a) assert that the Debtor does not own the FCC Licenses, (b) assert that the Debtor cannot, in light of its lack of ownership of the FCC Licenses or otherwise, properly grant, and has not properly granted, any valid security interests and/or liens in connection with the FCC Licenses or proceeds thereof, and (c) assert the claims and positions which are the subject of and/or are related to the District Court litigation and FCC Proceeding discussed in the SkyTel Objection. The Debtor denies the claims of SkyTel.

27. To the extent any of the terms, conditions, or provisions of this Order conflict with any of the terms, conditions, or provisions of the DIP Loan Documents, the terms, conditions, and provisions of this Order shall govern and control.

28. The Objection of NRTC has been withdrawn as a result of additional information provided by the Debtor during the course of the hearing on the Emergency Motion.

29. The Objection of SkyTel is overruled subject to the terms, conditions, and provisions of this Order.

30. The UST's response as to whether there is sufficient information regarding the relationship between the Debtor and the Lender was considered by the Court and the Court has determined that this is an arm's length transaction. Repayment of this loan will not take priority over the payment of UST quarterly fees.

31. This Order is for interim relief only, and authorizes the Debtor to borrow up to $50,000.00 of the requested $150,000.00. A final hearing on the Emergency Motion is hereby scheduled for _October 17_, 2011, commencing _10:00_ o'clock a.m., at the Cochran U.S. Bankruptcy Courthouse, 703 Highway 145 North, Aberdeen, MS. Objections to the Emergency Motion must be filed with the Clerk of the Court on or before _October 13_,

2011, at 4:00 o'clock p.m., CST. Counsel for the Debtor is directed to immediately provide a copy of this Order and Emergency Motion to all creditors and parties-in-interest.

32. Accordingly, the Emergency Motion is granted subject to and consistent with the terms, conditions and provisions of this Order.

SO ORDERED, this the 21st day of September, 2011.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE

APPROVED AS TO FORM:

/s/Craig M. Geno
Craig M. Geno, Esq.
Attorney for the Debtor

/s/Stephen W. Ragland
Stephen W. Ragland, Esq.
Attorney for Pinnacle

/s/James A. McCullough, II
James A. McCullough, II Esq.
Attorney for NRTC

/s/Danny E. Ruhl
William H. Leech, Esq.
Danny E. Ruhl, Esq.
Attorneys for SkyTel

/s/Sammye S. Tharp
Sammye S. Tharp, Esq.
Trial Attorney for the UST

PRESENTED BY:

Craig M. Geno; MSB No. 4793
HARRIS JERNIGAN & GENO, PLLC
587 Highland Colony Parkway (39157)
P. O. Box 3380
Ridgeland, MS 39158-3380
601-427-0048 - Telephone
601-427-0050 - Facsimile